EXHIBIT C

05-14-09 Demurrer Hearing

```
1              SUPERIOR COURT OF THE STATE OF CALIFORNIA

2                    FOR THE COUNTY OF LOS ANGELES

3    DEPARTMENT 308              HON. EMILIE H. ELIAS, JUDGE

4

5    DAVID H. LUTHER, et al.,       )
                                    )
6                     Plaintiffs,   )
                                    )  SUPERIOR COURT
7         vs.                       )  CASE NO. BC 380 698
                                    )
8    COUNTRYWIDE HOMES LOANS        )
     SERVICING, LP, et al.,         )
9                                   )
                      Defendants.   )
10   _____)

11

12              REPORTER'S TRANSCRIPT OF PROCEEDINGS

13                    Thursday, May 14, 2009

14   APPEARANCES OF COUNSEL:

15   FOR THE PLAINTIFFS:   COUGHLIN, STOIA, GELLER, RUDMAN,
                           ROBBINS, LLP
16                         BY:  SCOTT SAHAM, ESQ.
                                TOM EGLER, ESQ.
17                         655 West Broadway
                           Suite 1900
18                         San Diego, California 92101-8498
                           (619)231-1058
19

20   FOR THE PLAINTIFFS:   BARROWAY, TOPAZ, KESSLER, MELTZER
                           & CHECK, LLP
21                         BY:  ANDREW ZIVITZ, ESQ.
                           280 King of Prussia Road
22                         Radnor, Pennsylvania 19087
                           (484)270-1485
23

24   (Appearances continued on next page.)

25

26

27                         DAVID A. SALYER, CSR, RMR, CRR
                           Official Court Reporter
28                         License No. 4410
```

C

Page 1

```
                              05-14-09 Demurrer Hearing
  1    APPEARANCES OF COUNSEL: (CONTINUED)

  2
       FOR COUNTRYWIDE:        GOODWIN, PROCTER
  3                            BY:  BRIAN E. PASTUSZENSKI, ESQ.
                                    LLOYD WINAWER, ESQ.
  4                            601 South Figueroa
                               Suite 4100
  5                            Los Angeles, California 90017
                               (213)426-2500
  6

  7    FOR KRIPILANI, ET AL.:
                               PAUL HASTINGS
  8                            BY:  WILLIAM F. SULLIVAN, ESQ.
                                    JOSHUA G. HAMILTON, ESQ.
  9                            515 South Flower Street
                               25th Floor
 10                            Los Angeles, California 90071-2228
                               (213)683-6252
 11

 12    FOR UNDERWRITERS:       GIBSON, DUNN & CRUTCHER, LLP
                               BY:  DEAN J. KITCHENS, ESQ.
 13                                 LINDSAY R. PENNINGTON, ESQ.
                               333 South Grand Avenue
 14                            Los Angeles, California 90071-3197
                               (213)229-7416
 15

 16    FOR KURLAND & GROGIN: CALDWELL, LESLIE
                               BY:  DAVID C. CODELL, ESQ.
 17                            1000 Wilshire Boulevard
                               Suite 600
 18                            Los Angeles, California 90017-2463
                               (213)629-9040
 19

 20    (Appearances continued on next page.)

 21

 22

 23

 24

 25

 26

 27

 28
```

C

```
  1    APPEARANCES OF COUNSEL: (CONTINUED)

  2
       FOR DAVID SAMBOL:       ORRICK, HERRINGTON & SUTCLIFFE, LLP
                                        Page 2
```

```
                        05-14-09 Demurrer Hearing
  3                         BY:   MICHAEL C. TU, ESQ.
                            405 Howard Street
  4                         San Francisco, California 94105-2669
                            (415)773-5852
  5

  6   FOR DAVID SPECTOR:    BINGHAM, MC CUTCHEN, LLP
                            BY:   JENNIFER M. SEPIC, ESQ.
  7                         355 South Grand Avenue
                            Suite 4400
  8                         Los Angeles, California 90071-3106
                            (213)680-6480
  9

 10

 11

 12

 13

 14

 15

 16

 17

 18

 19

 20

 21

 22

 23

 24

 25

 26

 27

 28
C                                                               1
```

```
  1   CASE NUMBER:                BC 380 698

  2   CASE NAME:                  LUTHER V. COUNTRYWIDE

  3   LOS ANGELES, CALIFORNIA     THURSDAY, MAY 14, 2009

  4   DEPARTMENT 308              EMILIE H. ELIAS, JUDGE
```

```
                        05-14-09 Demurrer Hearing
 5   REPORTER:                          DAVID A. SALYER, CSR 4410
 6   TIME:                              9:00 A.M.
 7                            -o0o-
 8         THE COURT:  Good morning on Luther.
 9         All right.  So this was interesting.  We learned about
10   these federal laws that you never knew existed.
11         It seems to me -- no one will be happy with this --
12   that this case at this demurrer should be -- everything should
13   be stayed and you ought to try to go back -- you ought to try
14   to remove this back to federal court.
15         I know the defense is going to say there is no
16   jurisdiction, therefore there is no removal.  The plaintiff
17   says there is jurisdiction here.
18         Really, I think you ought to give it a shot back over
19   there before I -- I'm not inclined to dismiss the case to do
20   that.  I think you ought to go back and see if they want it.
21         MR. SAHAM:  Your Honor, would you like to hear from the
22   plaintiffs on that?
23         THE COURT:  I can, but it's really -- everybody agrees
24   this is not a covered security.  I think everybody agrees with
25   that.
26         MR. SAHAM:  That's correct, your Honor.
27         THE COURT:  But what you're really asking me to argue
28   is even though -- as to whether it's an "or" or an "and" as to
```

                  DAVID SALYER, OFFICIAL COURT REPORTER

C                                                              2

```
 1   what a covered action is.
 2         MR. SAHAM:  Your Honor, I think that is not correct.  I
 3   think I can explain to your Honor hopefully why that's not
 4   correct.
 5         The Ninth Circuit has already held in this case that
```

05-14-09 Demurrer Hearing

6      your Honor has concurrent jurisdiction over these claims.

7          THE COURT:  They held that only with regard to --

8      because the issue is only taken to them on one ground.

9          Now, why that was done, I don't know, but when I read

10     their Ninth Circuit decision, it only talks about CAFA.

11         Do you want to show me where in here?  It only talks

12     about CAFA.

13         MR. SAHAM:  Your Honor, I will refer you to the

14     discussion session, which is Roman numeral II.

15         THE COURT:  Roman numeral II.  Okay.

16         MR. SAHAM:  The Ninth Circuit holds that the '33 Act

17     provides for concurrent jurisdiction in state and federal

18     courts over alleged violations of the '33 Act.  It strictly

19     forbids removal.  That is why the Ninth Circuit sent us back

20     here, your Honor.

21         The defendants effectively delayed the case two years

22     removing it to federal court, and the Ninth Circuit said this

23     is the appropriate jurisdiction where we filed the case.

24         And the California Court of Appeals has agreed on two

25     occasions, said a claim cannot be dismissed under SLUSA.

26         THE COURT:  I'm not dismissing it.  As I said, I have

27     no desire to dismiss it.  I don't think that's right to

28     dismiss it.

DAVID SALYER, OFFICIAL COURT REPORTER

C                                                                3

1          MR. SAHAM:  Your Honor, if it can't be dismissed and

2      two federal courts have already said we were supposed to be in

3      state court, where would your claim proceed?

4          THE COURT:  It says the Countrywide defendants removed

5      the action to federal court under the Class Action Fairness

05-14-09 Demurrer Hearing

6   Act.

7        MR. SAHAM:  Because they couldn't remove it under SLUSA

8   because there is concurrent jurisdiction with the state court.

9        THE COURT:  What do you do about the covered class

10  actions?

11       MR. SAHAM:  Your Honor, everyone agrees it's a covered

12  class action, but they also agree it's a covered security.

13       There are four things that have to happen for SLUSA to

14  apply, and the two California courts that have looked at

15  dismissal have said you need one to remove it -- to dismiss it

16  under SLUSA, it has to be a state law cause of action -- this

17  is indisputably a federal cause of action -- and, two, it has

18  to involve a covered security.

19       This doesn't involve a covered security, so therefore

20  it can't be removed.  It can't be dismissed.  It can't be

21  removed.  It's appropriately filed.

22       We could have filed it in Federal Court, but we chose

23  to file it here, and the Ninth Circuit said that's a correct

24  place to file the claim.  They have delayed the case two years

25  by removing it.  The two federal courts sent it back here.

26       To say we should be stayed to go back to another court

27  would be patently unfair.

28       THE COURT:  This whole discussion has to do with CAFA,

DAVID SALYER, OFFICIAL COURT REPORTER

C                                                                    4


1   doesn't it?

2        MR. SAHAM:  Your Honor, they removed the case under

3   CAFA.

4        THE COURT:  Relax.  Relax.  Take a deep breath.

5        MR. SAHAM:  Sorry, your Honor.

6        THE COURT:  It's okay.
                        Page 6

05-14-09 Demurrer Hearing

7        MR. SAHAM:  I just don't think there is any case law.

8        I mean, if you look at the California Court of Appeals,

9   you look at the Ninth Circuit, and you even look at the cases

10  that they have cobbled together, the two cases Pinto and Knox

11  where the removal was allowed by the federal courts -- they

12  come up with two, and we come up with ten where removal was

13  not allowed, where there was a removal, and the same thing

14  happened that happened with Judge Pfaelzer.  They said go back

15  to state court.

16       The two cases they have both specifically carve out,

17  both specifically recognize that the SLUSA removal provisions

18  only apply to a covered security.  As your Honor correctly

19  pointed out, everyone agrees this is a non-covered security so

20  therefore the action can proceed in state court.

21       You know, if defendants -- what your Honor is

22  suggesting is that they stipulate we are just back moving

23  along in front of Judge Pfaelzer?

24       THE COURT:  I didn't ask you to stipulate to anything.

25       MR. SAHAM:  I'm not really sure -- when you say stay it

26  and work it out and see if Judge Pfaelzer will take our case,

27  I'm not sure how that would work.

28       This is -- you have concurrent jurisdiction the Ninth

DAVID SALYER, OFFICIAL COURT REPORTER

C                                                                 5

1   Circuit said you have, and we should be allowed to proceed.

2        MR. PASTUSZENSKI:  Your Honor, may I address the Court?

3        THE COURT:  Yes.

4        MR. PASTUSZENSKI:  Brian Pastuszenski for the

5   Countrywide defendants.

6        Your Honor, I think your Honor is absolutely right that

Page 7

05-14-09 Demurrer Hearing

7  the Ninth Circuit, in its decision in this case, addressed one

8  thing and one thing only, and that was the ability of a

9  defendant under CAFA to remove a 1933 Act case.

10      As your Honor knows from the papers and otherwise,

11  subsequent to the Ninth Circuit's decision, the Seventh

12  Circuit came out in favor of removal under CAFA.  So you

13  actually have a circuit split at this point which is really

14  kind of beside the point.

15      But that was the only issue that was presented to the

16  Ninth Circuit.  And the Ninth Circuit's statement that there

17  is concurrent jurisdiction really was, in that context,

18  nothing more than dicta.  There is still concurrent

19  jurisdiction over non-class claims.

20      We believe, your Honor, based on Knox and Pinto and

21  Rovner and Pixel Plus, far more than a couple of cases which

22  have all held that if you have a covered class action, there

23  is no longer -- as a result of the securities litigation and

24  the Uniform Standards Act, there is no longer concurrent

25  jurisdiction over a covered class action.  You don't need to

26  go beyond that.

27      Those cases, your Honor, with all due respect to

28  plaintiffs' counsel, I think are quite clear that SLUSA worked

DAVID SALYER, OFFICIAL COURT REPORTER

C
                                                    6

1  a major change.  That was not presented to the Ninth Circuit

2  for reasons that had to do with a decision at the time that

3  CAFA did provide, as the Seventh Circuit has now agreed -- did

4  provide an avenue of removal.

5      We believed it made sense to take that as the removal

6  vehicle at the time.  That was prior to the district court's

7  decision in Knox which came down in January of 2009 which I

05-14-09 Demurrer Hearing

8  think everybody would agree is really the first decision since

9  SLUSA was passed that took all of the various crazy quilt of

10  cases, some of which, the ones I mentioned, held no concurrent

11  jurisdiction persisted after SLUSA, some of which permitted

12  removal of 1933 Act cases.

13       Under SLUSA, even though those cases don't involve

14  state law claims, other cases came out the other way.

15       What Knox did long after we took the removal under

16  CAFA, long after the Ninth Circuit had issued its opinion,

17  Knox took all of those various different holdings and said

18  here's what the cases haven't recognized.

19       They're conflating -- as I believe the plaintiffs have

20  done, they are conflating two distinct changes that SLUSA, the

21  Congress, made in the framework of the '33 Act jurisdictional

22  provisions.

23       One had to do with jurisdiction.  That is the first

24  part of what is Section 22(a) of the 1933 Act where the change

25  had to do with the scope of concurrent jurisdiction, and the

26  second change, which we, in our brief, refer to as the removal

27  amendment, changed the language vis-a-vis removability of

28  cases brought in the state courts under the 1933 Act.

DAVID SALYER, OFFICIAL COURT REPORTER

C                                                      7

1        I would submit, your Honor, that the district judge in

2  Knox got it precisely right that, after SLUSA, state courts

3  have continuing concurrent jurisdiction over one kind of 1933

4  Act claim.  And that is a non-covered class action, an

5  individual who might bring a '33 Act claim or a class action

6  that involves fewer than 50 class members.

7        This is not one of those class actions, your Honor.

Page 9

05-14-09 Demurrer Hearing

8    This is a class that by the plaintiffs' own allegations

9    involve potentially hundreds or thousands of class members who

10   bought these mortgage-backed securities, allegedly all across

11   the country.

12        Do you have a question?

13        THE COURT:  No.

14        MR. PASTUSZENSKI:  We absolutely believe, your Honor,

15   that the right decision here is for this Court -- the right

16   result is for this case to proceed in federal court.

17        We believe that is correct as a matter of subject

18   matter jurisdiction.  Despite the Ninth Circuit's opinion, we

19   continue to believe -- as the Seventh Circuit has now held in

20   the Katz decision, we continue to believe that CAFA provided a

21   means of removal, but at least in this circuit, that is

22   foreclosed to us until the Supreme Court resolves that circuit

23   split.

24        But we believe the language of post-SLUSA 1933 Act

25   statutes is clear if it is a covered class action, which this

26   indisputably is -- and the plaintiffs don't deny that -- that

27   ends the analysis.

28        The existence or not of a covered security is relevant

DAVID SALYER, OFFICIAL COURT REPORTER

C                                                              8

1    only to a second amendment, the amendment that went to the

2    removability of cases.

3         THE COURT:  I know.  Your argument seems to be that you

4    can't remove it; you basically just have to dismiss it.

5         MR. PASTUSZENSKI:  Well, your Honor --

6         THE COURT:  I can't -- I'm not going there.  I can't go

7    there.

8         MR. PASTUSZENSKI:  In Katz, your Honor -- not Katz, the

Page 10

05-14-09 Demurrer Hearing

9   Knox case.  In the Knox case, what the district judge actually

10  did is permit removal.

11       THE COURT:  That may be, but your theory originally had

12  been that you have to dismiss.  Your demurrer is to dismiss

13  it.

14       MR. PASTUSZENSKI:  It is, yes.  Based on lack of

15  subject matter jurisdiction.

16       THE COURT:  I know.  Your argument is if there is no

17  jurisdiction here, there is no way to remove it.

18       But we do that all the time.  We tell people to go to

19  another state or go somewhere else and see if they are going

20  to take it.  We just don't dismiss cases that are pending and

21  just do that.

22       MR. PASTUSZENSKI:  I think perhaps because of the same

23  practical concerns, the district judge in Knox versus Thackery

24  did the same thing, did precisely the same thing.

25       At the end of the day, rather than dismissing or

26  finding that dismissals should have happened, basically the

27  Court said removal was appropriate.  Removal was appropriate,

28  and therefore remand will not be ordered, the same end result

DAVID SALYER, OFFICIAL COURT REPORTER

C
                                                   9

1   at the end of the day.

2       THE COURT:  Well, it isn't really the same end result.

3  It has giant statute of limitations impacts, I would assume,

4  so I don't think that's a path I'm willing to take.

5       But I am willing to take the path of whether Knox is

6  correct and whether the federal court believes this is the way

7  it should go.  Because when you read the statute, it covers --

8  it probably reads that way.

Page 11

05-14-09 Demurrer Hearing

9          MR. SAHAM:  Your Honor, can I just refer you to two

10   points?

11          THE COURT:  Sure.

12          MR. SAHAM:  If you look at Knox -- I'm on page 2 of the

13   Lexis printout.

14          THE COURT:  I'm looking at Knox.  Let me get to page 2

15   of the Lexis printout.

16          MR. SAHAM:  Roman numeral IV, anti-removal provision,

17   the 1933 Act.

18          THE COURT:  I'm not on page 2.  I'm on the --

19          MR. SAHAM:  If you go to Roman numeral IV, the

20   anti-removal provision, the first paragraph of Knox.  It

21   starts out, "While 28 USC" --

22          THE COURT:  I have it.  I have it.  I'm looking right

23   at it.

24          MR. SAHAM:  It says, "Only a class action brought in

25   any state court involving a covered security as set forth in

26   subsection B shall be removable to the federal court."

27          They admit this doesn't involve a covered security.

28   This is an out-of-state district court opinion which isn't

DAVID SALYER, OFFICIAL COURT REPORTER

C
                                                              10

1   binding precedent, but it's what they're relying on.

2          On its face the case only involves covered securities.

3   This is a non-covered security.  Everybody admits it.  It's

4   not removable, your Honor, even under that analysis.

5          THE COURT:  These are actually registered, though,

6   aren't they?

7          MR. SAHAM:  They are.  They were sold pursuant to

8   registration statements.

9          THE COURT:  Federal registration statements.

Page 12

05-14-09 Demurrer Hearing

10          MR. SAHAM:  Covered security as defined by the

11   complicated regulations, it's undisputed in this case --

12   people don't agree -- it's a security traded on a national

13   exchange.

14          THE COURT:  That's 15 USC 77(R)(3), subpart A.

15          MR. SAHAM:  I'm sure you're right.  I don't have the

16   code memorized.

17          THE COURT:  I'm looking at it.

18          MR. SAHAM:  But no one is asserting these are covered

19   securities because they are not traded on the national

20   exchanges.  Defendants make other arguments that trigger off

21   of that concept.

22          So even under the two cases they cite, which are

23   outliers, your Honor, the minority, if you count up the

24   federal removal cases, the scale goes our way on that.  But

25   even the ones they rely on only on their face apply to covered

26   securities, and these are non-covered securities.

27          THE COURT:  What about the argument that you're going

28   to have renegade state courts all over the country ruling on

DAVID SALYER, OFFICIAL COURT REPORTER

C                                                          11

1    matters of something that has been allowed to be registered by

2    the -- which is registered even though it's not listed?

3          In a sense, it's kind of an interesting -- maybe you

4    can explain to me.  What difference does it make?  I don't

5    mean to this case but philosophically, as to whether the

6    securities registered and put on the New York Stock Exchange

7    and registered and not put on the New York Stock Exchange, why

8    should jurisdiction be different depending upon that?

9          MR. SAHAM:  Because the Congress said so, your Honor.

Page 13

05-14-09 Demurrer Hearing

10    We start in 1933.  They pass this act, the '33 Act, to

11  protect the integrity of our markets because they are so

12  important to us, and the United States Congress in 1933 said

13  you can file it in federal court if you want to.  You can file

14  it in state court if you want to.  If you file it in state

15  court, you can't remove it.

16    Now, the landscape didn't change on that until SLUSA.

17  SLUSA came along and said if you file a state court Blue Sky

18  law -- there are parallel state court causes of action -- if

19  you file one of those in state court, it can be removed.

20    If they wanted to expressly modify the removal

21  provisions to allow a '33 Act claim to be removed -- to

22  destroy concurrent jurisdiction, they would have said so.

23  That was not the intent of the Congress.  That is why the

24  Ninth Circuit sent it back here.

25    When you read the first paragraph, they are not

26  talking -- they are not responding to -- defendants knew SLUSA

27  didn't apply so they made a CAFA argument.  And the Court

28  summarizes what the statute says because all of these are

DAVID SALYER, OFFICIAL COURT REPORTER

C
                                                              12

1  amendments to the '33 Act.

2    When the Ninth Circuit and Judge Pfaelzer summarized

3  and looked at the statute in its totality, they found there is

4  concurrent jurisdiction, and then they went on to reject the

5  CAFA analysis.

6    THE COURT:  But here's my question.  I'm still trying

7  to understand this logically.

8    I understand making looking at laws logically is the

9  wrong approach, but if you bring the Blue Sky law on the same

10  securities you have here, it would have to go to federal

Page 14

05-14-09 Demurrer Hearing

11    court.

12         MR. SAHAM:  That is correct, your Honor.

13         THE COURT:  So you're bringing the same action.

14         It's even more odd than that.  You're bringing a state

15    court action on the security, and the state court can't hear

16    it, but you're bringing a federal action on the same security,

17    and the state court can hear it.

18         That is really the position you're taking.

19         MR. SAHAM:  Well, the logical analysis, your Honor --

20    and I wasn't in the Congress.  I didn't write the law.

21         THE COURT:  I understand.  But isn't that really what

22    you're saying is if you were to bring this under California

23    Blue Sky laws, it would be in federal court?

24         MR. SAHAM:  You're correct, your Honor.

25         There may have been and I'm sure there was a reason

26    when the Congress and counsel were looking at this, writing

27    the law.  There are 50 different laws, and some of them

28    provide more liability, some of them less.  They are a

DAVID SALYER, OFFICIAL COURT REPORTER

C                                                           13

1    hodgepodge of laws.

2         The '33 Act has been around for 70 years.

3         THE COURT:  Since '33.

4         MR. SAHAM:  Yes.  Exactly.  76 years, your Honor.

5         Everybody knows.  It's written out.  The Congress is

6    comfortable.  They are the ones that have written it, that

7    it's going to provide this sort of liability, strict liability

8    the United States Supreme Court has said under Huddleston, and

9    they said that a plaintiff can bring it in state court.

10         Your Honor, I think we have every right in the world to

Page 15

05-14-09 Demurrer Hearing

11 be here in state court.  I couldn't disagree with what you're

12 saying more, but if your Honor doesn't want us here in state

13 court, the fair thing to our clients, the State of Vermont,

14 the State of Maine and the other institutional investors as

15 well as the class who were egregiously harmed by this

16 conduct --

17      I mean, it was on the front page of the Los Angeles

18 Times today.  Mr. Mozilo may have some problems with the FCC

19 and the federal government.

20      THE COURT:   I saw that, but that's not relevant.

21      MR. SAHAM:  Your Honor, these securities have radically

22 declined in value.  If your Honor wants us to be in federal

23 court, maybe you should just remove us today and put us in

24 front of Judge Pfaelzer so we can proceed in lock step with

25 the federal cases.

26      Don't stay us.  That is exactly what they wanted.  They

27 have delayed this case for two years, your Honor.

28      THE COURT:  If I'm allowed to do that, I'm happy to do

DAVID SALYER, OFFICIAL COURT REPORTER

C
                                                    14

1 that.

2      MR. SAHAM:  Maybe Mr. Pastuszenski will stipulate to

3 that.

4      THE COURT:  If she wants it back.

5      It's not that I don't want you here.  I think it would

6 be a very fascinating case, and I'm happy to have you here.

7 But I sort of feel like the federal court ought to decide.

8      If they don't want me to have it, I probably should

9 listen to them.  I should have a determination from them

10 whether I should have it.

11      MR. SAHAM:  What would be unfair is to stay this case

Page 16

05-14-09 Demurrer Hearing

12  with no way to get our claims resolved by a jury.  If

13  Mr. Pastuszenski will stipulate that we can step into Judge

14  Pfaelzer's docket tomorrow --

15      THE COURT:  Step in there tomorrow.  If she remands it

16  back, I'm very happy to have you all.

17      MR. PASTUSZENSKI:  Your Honor, one thing I should point

18  out, if I may, is that when Judge Pfaelzer issued her order

19  remanding the case, she also noted that it was an anomalous

20  result.

21      I think her opinion indicated that if she were able,

22  she would have retained jurisdiction over the case in federal

23  court.

24      Things have changed at least in some respects.

25      THE COURT:  Then why don't we just agree to remand it

26  today.  You ought to be able to get in front of her real soon.

27  She will issue an order, and you can be back here in two

28  months.  It's fine with me.

DAVID SALYER, OFFICIAL COURT REPORTER

C                                                      15


1       I have no intention of dismissing it.

2       MR. SAHAM:  I appreciate that, your Honor.

3       THE COURT:  I think you have a very interesting issue.

4   It's clearly not resolved by the split of the circuit, by the

5   cases going different ways.  The issue is clearly not

6   resolved.  I believe it has to be resolved by the federal

7   court and not by me.

8       It would be a bad path for me to go down and take

9   jurisdiction on it, and we spend a lot of time here, and then

10  at some point we find out that it never should have been here.

11      It will be much better to get the final ruling from the

05-14-09 Demurrer Hearing

12  federal court as to where it should to be.

13       MR. SAHAM:  The procedural concern I have, how is this

14  going to happen?  Are they filing a motion orally to remove us

15  to federal court, or are you sua sponte removing us to federal

16  court?

17       THE COURT:  Are you willing to stipulate today to

18  removal to federal court?

19       MR. PASTUSZENSKI:  Your Honor, if I may, what I would

20  suggest, given that this is a suggestion that the parties

21  hadn't previously considered, the procedural implications of

22  which, removal, dismissal, I think perhaps should be

23  discussed --

24       THE COURT:  I'm not going to dismiss it.  I can tell

25  you that.

26       Maybe; I don't know.  I guess I could just on my own

27  decide that I'm not granting the demurrer and instead I'm

28  remanding this -- removing this.

DAVID SALYER, OFFICIAL COURT REPORTER
                                          16
C

1       I will sign an order removing it to federal court, and

2  the worse they can do is tell me that I can't do that.

3       MR. SAHAM:  Not that we agree that that's correct, your

4  Honor, but that is preferable to just a morass of not having

5  anything happen for two years.

6       THE COURT:  I have no problem with doing that.

7       MR. PASTUSZENSKI:  Your Honor, if I may suggest, if we

8  could -- I understand Mr. Saham's position regarding a stay of

9  some indeterminate nature, but what may make sense is a brief

10  period of time, a few days during which time the parties,

11  defendants among themselves and then defendants and the

12  plaintiffs can confer and decide what makes sense.

Page 18

05-14-09 Demurrer Hearing

13      THE COURT:  Okay.

14      MR. PASTUSZENSKI:  There is one thing I would

15  absolutely agree with your Honor on.  Your Honor just made

16  this point.

17      To the extent that we are correct that the statute

18  divested state courts of subject matter jurisdiction, it would

19  be a tremendous waste of the Court's resources, the parties'

20  resources, to go a long way down the road to have the whole

21  thing be a nullity.

22      THE COURT:  What I can do is hold this until -- I can't

23  go later than a week from today because I leave on vacation

24  after Memorial Day.  I really do need to move you along by

25  then.

26      MR. SAHAM:  I appreciate that, your Honor.

27      THE COURT:  Put it under submission until the 21st.

28      If I don't receive a stipulation or some other order by

DAVID SALYER, OFFICIAL COURT REPORTER

C                                                                17

1   the 21st, I will just issue an order remanding it.  All they

2   can do is tell me I can't do it.

3       Here is what I'm asking for, then.  Either you send me

4   a stip by noon on the 21st, or counsel, plaintiffs' counsel,

5   you send me an order for me to sign remanding it on my own,

6   sua sponte.

7       MR. SAHAM:  Thank you, your Honor.

8       One other point.  They wanted us coordinated for

9   discovery with the federal litigation, and your Honor agreed

10  last time we were here and they have agreed that any documents

11  produced to the federal plaintiffs will be produced to us.

12      I certainly think the ruling you're making wouldn't

05-14-09 Demurrer Hearing

13  allow them to suggest that discovery wouldn't proceed in lock

14  step as they wanted it to proceed with the federal case.

15       THE COURT:  Not at all.

16       MR. PASTUSZENSKI:  Your Honor, if it's in federal

17  court, then --

18       MR. SAHAM:  Before it gets to federal court.

19       THE COURT:  As I said, if you can get to her -- I will

20  say it on the record for her again.  If you get there soon and

21  the answer is no, I really have jurisdiction, just immediately

22  notify us, and we will put you back on immediately.

23       MR. SAHAM:  But discovery is not stayed?

24       THE COURT:  I'm not staying anything else.

25       MR. TU:  Your Honor, Michael Tu for defendant David

26  Sambol.

27       I have heard everything that you've been saying.  I

28  just did want to raise, you mentioned that if you didn't

DAVID SALYER, OFFICIAL COURT REPORTER

C                                                                18

1  have -- if you didn't have some sort of stipulation by the end

2  of the week, you would be remanding.

3       Would you also be dismissing the demurrers or granting

4  the demurrers?  Because I would like to at least be heard on

5  Mr. Sambol's behalf for the demurrer, which I think is a very

6  discrete demurrer, if that would be the case.

7       THE COURT:  You know, I really -- I don't think so.  I

8  think if it goes to federal court, the federal court has to

9  decide.  Everything has to wait to go there.

10       MR. TU:  All right.  If you were to remand the case,

11  you would not actually be ruling upon the demurrers.

12       THE COURT:  I won't rule on the demurrers.  I will

13  remand it.

Page 20

05-14-09 Demurrer Hearing

14        If they come back, they will come back.  I would

15   assume, hopefully, you will come back.  She knows the case

16   now.  She will either decide that I'm wrong and I have it back

17   or not.  Then the demurrer will just be recalendared

18   immediately.

19        MR. TU:  Okay.  Thank you.

20        THE COURT:  Does that work?  I know, not what you want.

21        MR. SAHAM:  Thank you, your Honor.

22        MR. PASTUSZENSKI:  Thank you.  Okay.

23        THE COURT:  So get me orders by -- notice will just be

24   it's under submission until the 21st.

25        Can notice be waived until then?

26        MR. SAHAM:  Yes.  Certainly.

27        MR. PASTUSZENSKI:  Yes, your Honor.  Thank you.

28        (End of proceedings.)

                DAVID SALYER, OFFICIAL COURT REPORTER

C

1            SUPERIOR COURT OF THE STATE OF CALIFORNIA

2                 FOR THE COUNTY OF LOS ANGELES

3   DEPARTMENT 308            HON. EMILIE H. ELIAS, JUDGE

4

5   DAVID H. LUTHER, et al.,          )
                                      )
6                     Plaintiffs,     )
                                      ) SUPERIOR COURT
7            vs.                      ) CASE NO. BC 380 698
                                      )
8   COUNTRYWIDE HOMES LOANS           )
    SERVICING, LP, et al.,            )
9                                     )
                      Defendants.     )
10  _____)

11

12

13

                        Page 21

05-14-09 Demurrer Hearing

14        I, DAVID SALYER, OFFICIAL COURT REPORTER OF THE

15   SUPERIOR COURT OF THE STATE OF CALIFORNIA, FOR THE COUNTY OF

16   LOS ANGELES, DO HEREBY CERTIFY THAT THE FOREGOING PAGES, 1

17   THROUGH 19, INCLUSIVE, COMPRISE A TRUE AND CORRECT TRANSCRIPT

18   OF THE PROCEEDINGS TAKEN IN THE ABOVE-ENTITLED MATTER REPORTED

19   BY ME ON May 14, 2009.

20        DATED May 15, 2009.

21

22

23

24        _____

25        DAVID A. SALYER, CSR No. 4410, RMR
               Official Court Reporter

26

27

28


              DAVID SALYER, OFFICIAL COURT REPORTER

C