JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| David H. Luther, *et al.*, <br><br> Plaintiffs, <br> v. <br><br> Countrywide Financial Corp., *et al.*, <br><br> Defendants. | Case No. <br> CV-09-06162-MRP (JWJx) <br><br><br><br> ORDER DISMISSING the Complaint |
|---|---|

# BACKGROUND

The following background is necessary to understand this case's peculiar posture. That posture, in turn, explains this order's rare conclusion: *sua sponte* dismissal before any motion or briefing on the issues.[1]

**A. The issue presented for declaratory judgment.**

This declaratory judgment action relates to a case in California state court between the same parties ("*Luther I*"). Defendants previously removed *Luther I* to this Court under the case number CV-07-08165-MRP. *Luther I* asserts solely federal claims under the Securities Act of 1933 ("'33 Act").[2]

---

[1] The Court held a status conference in this case on October 8, 2009. The parties were heard on the issues discussed in this order.

[2] *Luther I*, in turn, is factually related to a number of large cases pending before this Court.

-1-

1  Upon removal in *Luther I*, Defendants argued that <u>removal</u> was proper under
2  the "Class Action Fairness Act" ("CAFA"). This Court and a unanimous panel of
3  the Ninth Circuit concluded that removal was improper. Both opinions mention the
4  Securities Litigation Uniform Standards Act ("SLUSA"). And both opinions
5  recognize that, after CAFA and SLUSA, the federal courts have struggled with
6  securities jurisdiction and removal. 533 F.3d 1031 (9th Cir. 2008); 2008 U.S. Dist.
7  LEXIS 26534 (C.D. Cal. Feb. 28, 2008).[3] It appears that Defendants neither moved
8  for rehearing nor petitioned for certiorari. The Ninth Circuit issued its mandate for
9  remand; and this Court remanded. Upon remand, "a district court disassociates
10  itself from the case entirely, retaining nothing of the matter on the federal court's
11  docket." *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 714 (1996).

12  After remand, Defendants raised a SLUSA <u>jurisdictional</u> issue in *Luther* I to
13  Judge Emilie H. Elias, who is presiding over *Luther I* in the state court. Defendants
14  did not raise a SLUSA issue (removal or jurisdictional) in this Court; nor did they
15  raise it before the Ninth Circuit.[4]

16  Following a colloquy about *Knox v. Agria Corp.*, 613 F. Supp. 2d 419
17  (S.D.N.Y. 2009) (recognizing a split of authority on SLUSA removal, reading part

---

[3]   The federal courts continue to disagree about the CAFA removal issue. Indeed, the Seventh Circuit has expressly split from the Ninth Circuit on the *Luther I* CAFA removal issue. *Katz v. Gerardi,* 552 F.3d 558 (7th Cir. 2009) (Easterbrook, J.). *See also Pub. Employees' Ret. Sys. of Miss. v. Morgan Stanley*, 605 F. Supp. 2d 1073 (C.D. Cal. 2009) (Pfaelzer, J.) (recognizing the "difficult questions" presented in federal securities removal cases, especially in light of *Luther I* and *Katz*).

However worthy the issue may be of further development at appellate levels, the CAFA removal issue is settled in this jurisdiction—and for *Luther I*.

[4]   Defendants appear to have argued to Judge Elias that they neglected to make a SLUSA argument because they felt confident of success under CAFA (rather than because intervening federal decisions in other jurisdictions have brought forward new arguments in support of a position they either failed to consider or considered and rejected). Compl. Ex. C at 8.

of SLUSA "as a 'guide'" by construing a reference to a statutory section as referring to a definitional subsection, and concluding that the reference and a definition affect jurisdiction), Judge Elias suggested removing *Luther I* again to this Court. Compl. Exh. C at 16. Judge Elias expressed concerns about the issue's gravity; she also stated her preference that a federal court hear Defendants' SLUSA argument in the first instance. *Id.* at 16-19.

Perhaps because a second removal was not procedurally available, Judge Elias subsequently entered an order staying *Luther I*. The order also compelled "Plaintiffs to file an action" in this Court. Compl. Exh. A.[5] Judge Elias did so "in an abundance of caution, and in order to promote efficiency." *Id.* at 3. She reiterated her "willing[ness] to preside over the action and to vigorously proceed with the litigation." *Id.* at 3 n.7.

Plaintiffs then filed this case. It seeks declaratory judgment that SLUSA is no impediment to Judge Elias' jurisdiction in *Luther I*. Compl. at 14 ¶ A.

This Court understands well the importance of jurisdiction and Judge Elias' concerns. Some observers find SLUSA and CAFA poorly drafted; some have pointed out possible drafting errors. Such drafting is particularly dangerous in legislation that may affect jurisdiction, removal, preemption, or related issues.

Judge Elias' thoughtful and sincere consideration is apparent from the record. This Court is confident that Judge Elias, and the rest of the state judiciary, can reach an appropriate conclusion, regardless whether this Court (or another lower federal court) might come to the same conclusion.

---

[5] The parties dispute precisely what Judge Elias intended Plaintiffs to do. The order and transcript might admit of reasonable dispute as to whether she envisioned an action (1) seeking declaratory relief; (2) asserting the same substantive '33 Act claims as *Luther I*; (3) seeking either declaratory relief or asserting substantive claims in the alternative; or (4) seeking some other form of relief. *See* Compl. Exh. A.; *id.* Exh. B at 18-20.

**B. Important issues raised by this case's procedural posture.**

The federal courts have jurisdictional and procedural limitations. The present parties may have a case or controversy between them on SLUSA, but this action was filed under court order. *See* U.S. CONST. art. III, § 2. It may also be that the state court intends to treat a judgment from this Court as an advisory opinion in a literal sense. *See id.*; Compl. Exh. C at 16 (Elias, J., "If [the federal courts] don't want me to have [*Luther I*], I probably should listen to them."). And this action splinters from a case already remanded to state court.

There are myriad potential issues raised by this case's procedural posture—including constitutional limits on federal jurisdiction, prudential justiciability and abstention doctrines, and *Luther I*'s possible preclusive effect. *See, e.g.*, *Calderon v. Ashmus*, 523 U.S. 740 (1998) (discussing some types of justiciable cases and controversies under the Declaratory Judgment Act); *Quackenbush*, 517 U.S. at 716-23 (surveying abstention doctrines).

Under ordinary circumstances, the Court would have the benefit of a full adversarial dispute to clarify the issues. Though Plaintiffs contend that they were ordered to file this action as a declaratory relief action, they also appeared, at the status conference in this matter, to suggest that this Court should decline to provide declaratory relief. This was apparently part of an argument that Defendants are attempting to delay *Luther I*.[6] Meanwhile, Defendants argued at the status conference that federal jurisdiction over this declaratory judgment action is improper. Defendants may have suggested that Plaintiffs chose, for tactical

---

[6] Of course, it was Plaintiffs' choice to file *Luther I*, asserting only federal claims, in state court. By so doing, counsel all but ensured that their case would be delayed by removal proceedings. They likewise invited any jurisdictional challenges and the likelihood that, if the state court has jurisdiction, *Luther I* would not be easily coordinated with the related federal cases, which are now at later stages of litigation than *Luther I*.

-4-

reasons, to interpret Judge Elias' order as calling for a declaratory relief action.[7] In these circumstances, this Court cannot rely on the adversarial system to clarify the issues.

Thus, rather than tackle the bodies of constitutional and other law that this case might implicate, the Court assumes—though it doubts—that this case faces no absolute bar (jurisdictional, procedural, or otherwise). The Court also pretermits the prudential jurisdictional and abstention doctrines—though one or more doctrines almost surely prevent this case from proceeding under any nonabusive exercise of discretion.[8]

The Court instead follows a path with fewer legal nuances: whether a declaratory judgment would serve a useful purpose under the Declaratory Judgment Act. 28 U.S.C. § 2201(a). The Court does so because "[d]istinct features of the Declaratory Judgment Act . . . vest[] district courts with greater discretion" to decline a case than other doctrines. *Wilton v. Seven Falls*, 515 U.S. 277, 286 (1995).

## DISCUSSION

"[I]f a district court, in the sound exercise of its judgment, determines after a complaint is filed that a declaratory judgment will serve no useful purpose, it cannot be incumbent upon that court to proceed to the merits before staying or dismissing the action." *Wilton*, 515 U.S. at 288; *see also Exxon Shipping Co. v. Airport Depot Diner, Inc.*, 120 F.3d 166, 168 (9th Cir. 1997) ("If the relief [requested under the Declaratory Judgment Act] serves no purpose, <u>or an illegitimate one</u>, then the district court should not grant it." (emphasis added)).

---

[7] On the other hand, if Plaintiffs had filed a case duplicating *Luther I*'s substance, another set of procedural and jurisdictional arguments may have been had.

[8] However, to whatever extent other discretionary grounds—alternative to the ground expressly ruled upon—are available, the discussion that follows should be construed as reasoning to the same result on those alternative grounds.

First, declaratory judgment would serve no useful purpose because these parties have a case on the merits in the state forum. Parallel proceedings and piecemeal litigation are both disfavored under the Declaratory Judgment Act. *Principal Life Ins. Co. v. Robinson*, 394 F.3d 665, 672 (9th Cir. 2005); *McGraw-Edison Co. v. Preformed Line Prods. Co.*, 362 F.2d 339, 342-43 (9th Cir. 1966). The state system handling *Luther I* may resolve any federal issues presented.

Relatedly, declaratory judgment would serve no useful purpose because it would violate at least the spirit of federalism by circumventing the state system.[9] Comity and federalism concerns are appropriately considered in a Declaratory Judgment Act analysis. *Principal Life*, 394 F.3d at 672. Principles of comity and federalism recognize that state courts are competent to decide issues of federal law—no matter whether some federal courts might disagree with a state court's determination. *Kruelski v. Conn. Superior Court*, 316 F.3d 103, 105-06 (2d Cir. 2003) (Calabresi, J.). Indeed, "[t]he Circuit Courts of Appeals were to be equal in dignity to the Supreme Courts of the several States." *Dick v. New York Life Ins. Co.*, 359 U.S. 437, 448 (1959) (Frankfurter, J., dissenting). And the United States Supreme Court may review federal issues upon final judgment from the "highest [state] court . . . in which a decision could be had." 28 U.S.C. § 1257. Together, these considerations teach that the state judiciaries are entrusted, in the same way as the lower federal courts, to decide issues such as Defendants' SLUSA argument.[10] It serves no useful purpose—in fact, it would undermine principles of

---

[9] Here, a concerned state court judge initiated the proceedings. This case might therefore pose less threat of usurping the role entrusted to the state system. However, the California Courts of Appeal, California Supreme Court, or the nonjudicial branches of California's government could take a different view from the judge who "compelled" Plaintiffs to file a federal action.

[10] *See also Confederated Tribes of Colville Reservation v. Superior Court*, 945 F.2d 1138, 1141-42 (9th Cir. 2001) (discussing the system of review and explaining that a declaratory judgment action cannot be used to "horizontal[ly] appeal" a state court decision to a lower federal court).

1  federalism and comity—to circumvent the state system by this collateral
2  declaratory judgment action.
3       Moreover, declaratory judgment would serve no useful purpose because
4  such a novel procedure threatens the horizontal separation of powers. Many
5  states—including California—have a well established process by which federal
6  appellate courts can certify questions of state law to a state's highest court. *See,*
7  *e.g.*, Cal. R. Ct. 8.548. But Congress has not provided for "'reverse' certification
8  from state courts to federal courts . . . ." *Kruelski*, 316 F.3d at 106 & n.1. In the
9  absence of a federal reverse-certification statute, proper judicial restraint militates
10 against presuming that Congress intended reverse certification as a useful (or even
11 legitimate) purpose for the Declaratory Judgment Act.
12      In sum, this Court exercises its discretion under the Declaratory Judgment
13 Act. It concludes that this case will serve no useful purpose within the meaning of
14 the Act. A state forum is available, equally competent, and has a case on the merits
15 before it. Moreover, the contrary result would create precedent undesirable for
16 federal-state and legislative-judicial relations.
17 / / /

**ORDER**

This declaratory judgment action serving no useful purpose, the case is DISMISSED.

IT IS SO ORDERED.

DATED: October 9, 2009

                                                             _____
Hon. Mariana R. Pfaelzer
United States District Judge